UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:15 CR 556 JAR (JMB) |
| | ) | |
| ORLANDO STEWART, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATIONS**
**OF UNITED STATES MAGISTRATE JUDGE**

Currently before the Court is Defendant Orlando Stewart's Motion to Suppress Evidence

and Statements ("Defendant's Motion to Suppress").  (ECF No. 26)  The government filed an

opposition to Defendant's Motion to Suppress.  (ECF No. 32)  Pretrial matters, including any

motions to suppress evidence, have been referred to the undersigned United States Magistrate

Judge, under 28 U.S.C. § 636(b).

In general, Defendant contends that evidence and statements were taken from him in

violation of his rights under the Fourth and Fifth Amendments during the execution of a search

warrant on April 6, 2015, at Defendant's residence located at 2845 Accomac, in the City of St.

Louis.  Regarding physical evidence seized, Defendant contends that he is entitled to a hearing

pursuant to Franks v. Delaware, 438 U.S. 154 (1978), because the affidavit accompanying the

search warrant allegedly included knowing and intentional, or recklessly made, false statements

that are necessary to a finding of probable cause.  Regarding statements, Defendant contends that

the police continued to interview him after he asserted his right to remain silent.[1]

---

[1] As noted below, after the evidentiary hearing, Defendant filed a motion to supplement

The government, in contrast, contends that Defendant failed to make the required substantial preliminary showing that would entitle him to a <u>Franks</u> hearing, and that Defendant's statements were taken in compliance with <u>Miranda</u> and the Fifth Amendment. The government submitted as Exhibit A, a copy of the search warrant, affidavit, and return. (ECF No. 32-1)

On May 23, 2016, the undersigned held an evidentiary hearing in this matter. Defendant was present and represented by Assistant Federal Public Defender Brocca Morrison. The government was represented by Assistant United States Attorney Cristian Stevens. At the outset of the hearing, the undersigned advised the parties that Defendant had not made the required substantial preliminary showing necessary to be entitled to a <u>Franks</u> hearing.

The government presented the testimony of St. Louis Metropolitan Police Officer William Wethington. Generally speaking, Officer Wethington testified as to the execution of the search warrant on April 6, 2015, and the circumstances regarding statements made by Defendant. Defense counsel cross-examined Officer Wethington extensively.

During the hearing, the Court received one additional exhibit. Government's Exhibit B was a CD that included an audio recording of a portion of Defendant's statements to Officer Wethington.

At the conclusion of the presentation of evidence, the parties requested the opportunity to submit proposed findings of fact and conclusions of law after a transcript of the hearing was available. The parties have each submitted their respective proposed findings of fact and conclusions of law. (ECF Nos. 48, 50) Defendant also submitted a supplement to his previously filed motion to suppress, adding a challenge to the admissibility of Defendant's statements

_____

his motion to suppress statements. (ECF No. 47) In his supplement, Defendant also argues that the police engaged in an unconstitutional two-step interrogation process, in violation of <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004).

pursuant to <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004).  (ECF No. 47)

Based on the testimony and evidence adduced at the evidentiary hearing, and having had the opportunity to observe the demeanor and evaluate the credibility of the witness, and having fully considered the parties' written submissions, the undersigned makes the following findings of fact, conclusions of law, and recommendations.

## FINDINGS OF FACT

1.      On April 6, 2015, in the Circuit Court for the City of St. Louis, Officer William Wethington applied for and obtained a warrant authorizing the search of the following premises:

> 2845 Accomac:  Multifamily home of brick construction.  Numeric 2845 is clearly visible above the front door.  The target of this warrant, Orlando Stewart DOB [redacted] SSN [redacted]

Gov't Exh. A.  The warrant was issued on the basis of probable cause that "illicit narcotics, firearms and indicators of residency or ownership" would be found during the search.  The search warrant specifically authorized the search of the "premises above described."

2.      The affidavit that Officer Wethington supplied in support of his warrant application included numerous statements attributable to a known Confidential Informant ("CI").

3.      In his affidavit, Officer Wethington represented the following facts with respect to the CI, among other facts:

> (CI) states he/she regularly purchases small amounts of heroin from Stewart at the residence.  (CI) further states Stewart keeps what (CI) believes to be a 9mm semi automatic pistol under his mattress and has seen [it] on multiple occasions.

> (CI) knows this information to be accurate because he or she lived with Stewart for a period of approximately one month earlier this year, and since then travels to 2845 Accomac about three times a week to purchase heroin.

> ***

> (CI) states Stewart will usually keep his narcotics under [his] mattress next to his firearm.

***

On April 2nd, 2015 I was contacted by (CI) who informed me he/she had just purchased a small amount of heroin from Stewart inside 2845 Accomac earlier that day. (CI) further stated that Stewart would be selling from the home for the duration of the day.

***

On April 5th, 2015, I met with (CI) who stated he/she had once again been inside 2845 Accomac and had purchased narcotics from Stewart. While inside, (CI) observed the same 9mm pistol underneath Stewart's mattress.

(Gov't Exh. A)

4.      In his affidavit, Officer Wethington represented that this CI had a history of reliability over a ten month period, and had provided information that had been used to obtain narcotics-related charges and search warrants. Officer Wethington also represented that he had independently corroborated information from the CI. For example, Officer Wethington confirmed that Defendant's reported address in State and City databases was 2845 Accomac, and that Defendant had been arrested for possession of a controlled substance. Additionally, Officer represented that he had conducted surveillance at 2845 Accomac and observed activity consistent with narcotics sales.

5.      Officer Wethington has been an officer with the St. Louis Metropolitan Police for approximately five years. Officer Wethington previously served as a Sergeant in the United States Marine Corps. At the time of the events at issue herein, Officer Wethington had participated in approximately 25-30 search warrants.

6.      On April 8, 2015, Officer Wethington, who was part of a SWAT team, executed the warrant to search 2845 Accomac. Officer Wethington was a member of the "stack" that made entry into the residence.

7.      Upon entry into the residence, Officer Wethington observed Defendant in a back

bedroom, which Officer Wethington described as the master bedroom. Defendant was called out of that bedroom, escorted to the front of the property and placed in plastic hand restraints. There is no dispute that Defendant was in custody at the time he was restrained.

8. Shortly after restraining Defendant, but before he conducted any search, Officer Wethington advised Defendant of the existence of the search warrant and the general nature of the investigation. Stewart told Officer Wethington that there were no firearms in his residence but that he was a drug user. This statement was not recorded and Defendant had not yet been advised of his Miranda rights. Officer Wethington included this spontaneous statement in his report, but not any other spontaneous statements Defendant allegedly made during the search of his residence. Also during approximately this time, the officers proceeded to conduct a sweep to ensure that the residence was secure and safe.

9. After Officer Wethington advised Defendant of the warrant and the nature of the investigation, Officer Wethington conducted a quick search of the master bedroom area. Officer Wethington found a loaded, five-shot, .38 caliber revolver in a Crown Royal bag in the bedroom.

10. After he found the revolver, Officer Wethington returned to Defendant, who was then seated in the front of the residence and asked, "Orlando, what do you think I found in your room?" Defendant responded to Officer Wethington and proceeded to provide a number of reasons why the gun was in his residence. Shortly thereafter, Officer Wethington advised Defendant to stop talking because Defendant was going to be charged. Officer Wethington took Defendant to another room, and read Miranda warnings to Defendant.

11. Shortly before he advised Defendant to stop talking, Officer Wethington activated a recorder and began to record his interactions with Defendant. Officer Wethington described Defendant as talkative and the recording supports that description.

12.     After Officer Wethington read Defendant his <u>Miranda</u> rights, he asked Defendant whether he understood his rights.  Defendant responded, "I do."  Officer Wethington then asked Defendant if he wished to make a statement.  Defendant responded, "No."  In response, Officer Wethington asked, "So you and I are not talking the rest of the night, correct?"  Defendant responded, "I guess so," but continued to talk and try to explain why there was a gun in his home.  This interaction between Defendant and Officer Wethington is contained on the recording submitted as Government's Exhibit B.

13.     From the time Officer Wethington entered the residence, until he began the recording, was about five minutes.  Officer Wethington provided <u>Miranda</u> warnings shortly after the recording began.  The entire recording lasts slightly less than four minutes.

14.     In addition to the .38 caliber revolver, the police also found 9mm ammunition in Defendant's residence, as well as other indicia of drug trafficking, including one bag containing ten smaller bags of suspected crack cocaine, and eight charred glass tubes with residue.

## DISCUSSION, CONCLUSIONS OF LAW, AND RECOMMENDATIONS

As noted above, Defendant's Motion to Dismiss raises two distinct issues. Regarding the physical evidence seized from his home, Defendant contends that he is entitled to a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), because the affidavit accompanying the search warrant included knowing and intentional, or recklessly made, false statements that are necessary to a finding of probable cause.  Regarding statements, Defendant contends that the police questioned him, while in custody, after he invoked his right to remain silent.

## I.     Motion for *Franks* Hearing

 Defendant contends that the affidavit submitted in support of the warrant to search his

residence included false information.  Defendant also contends that such information was

included knowingly and intentionally, or with reckless disregard for its truth.   Accordingly,

Defendant argues that he is entitled to a hearing pursuant to Franks v. Delaware, 438 U.S. 154

(1978).

"The Fourth Amendment requires a showing of probable cause before a search warrant

may be issued."  United States v. Williams, 477 F.3d 554, 557 (8th Cir. 2007).  Normally,

"[w]hen a magistrate relies solely on an affidavit to issue the warrant, only that information

which is found within the four corners of the affidavit may be considered in determining the

existence of probable cause."  United States v. Farlee, 757 F.3d 810, 819 (8th Cir. 2014) (internal

quotations and citation omitted).  In Franks, the Supreme Court explained that, in certain

circumstances, the Fourth Amendment entitles a defendant to an evidentiary hearing regarding

the accuracy of the search warrant affidavit.  See Franks, 438 U.S. at 155-56.

A defendant is not automatically entitled to an evidentiary hearing under Franks.  "There

is … a presumption of validity with respect to the affidavit supporting [a] search warrant."

Franks, 438 U.S. at 171.  A defendant's conclusory allegations of false information are

insufficient.  Id.  "In order to be entitled to a hearing under Franks the defendant must make a

substantial preliminary showing of a false or reckless statement or omission and must also show

that the alleged false statement or omission was necessary to the probable cause determination."

United States v. Crissler, 539 F.3d 831, 833 (8th Cir. 2008) (internal citations and quotations

omitted).  See also United States v. Mashek, 606 F.3d 922, 928 (8th Cir.  2010).  The substantial

"showing is not easily made."  United States v. Engler, 521 F.3d 965, 969 (8th Cir. 2008).

"Allegations of negligence or innocent mistake will not suffice to demonstrate a reckless or

deliberate falsehood."  Mashek, 606 F.3d at 928 (citing Franks, 438 U.S. at 171).  To determine

whether statements were made with reckless disregard for the truth, courts consider "whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." United States v. Butler, 594 F.3d 955, 961 (8th Cir. 2010).

In Franks, the Supreme Court explained that a defendant's substantial preliminary showing must include

> allegations of deliberate falsehood or of reckless disregard for the truth[.] [T]hose allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted ... is only that of the affiant, not of any nongovernmental informant.

Franks, 438 U.S. at 171. See also Williams, 477 F.3d at 557 (quoting same).

In the present case, Defendant has not met his burden of making a substantial preliminary showing that any information in the affidavit was false, or that information bearing on probable cause was omitted from the affidavit.

Defendant's argument is fairly simple. Defendant contends that, although the CI reported that s/he purchased *heroin* from Defendant, and that Defendant kept what the CI believed to be a *9mm semi-automatic* pistol in the residence, the police found *cocaine* and a *.38 caliber revolver* during the search. Thus, according to Defendant, the affidavit necessarily included false information.

Defendant has offered no case law to support his argument that, because the evidence seized did not match the evidence expected, the affidavit must necessarily include false information. More importantly, Defendant's argument does not add up factually.

The undersigned finds that Officer Wethington did not intentionally or recklessly include

any false information in his affidavit. Defendant identified a mere possibility that a historically reliable CI provided wrong or erroneous information to Officer Wethington in this instance. Thus, construing the facts in a light most favorable to Defendant, at best Defendant has suggested that Officer Wethington included false information negligently or due to an innocent mistake.

But even the possibility of negligence or innocent mistake is undercut by the undisputed facts of this case. For example, during the execution of the search, the police recovered 9mm ammunition. This presence of 9mm ammunition suggests that, as the CI reported, a 9mm pistol had been in the residence at some point. Moreover, the affidavit did not state that Defendant *only* sold heroin. Rather, it also referred to narcotics generally, and Officer Wethington reported in his affidavit that he independently observed what he interpreted to be narcotics trafficking activities at Defendant's residence. Additionally, the CI reported only that Defendant sold him/her small amounts of heroin. There was no allegation that a large quantity of heroin was always present in the residence. Thus, Defendant has not shown that any of the information from the CI was necessarily false at all. And even if the CI's information was wrong, there is no showing that the wrong information was included intentionally in any manner.

Similarly, Defendant has not shown that Officer Wethington acted with reckless disregard for the truth in relying on the CI's information regarding the type of drug sold and the type of handgun observed at Defendant's residence. Again, the CI had a history of reliability. That is not disputed herein. Officer Wethington conducted research regarding Defendant's criminal history and surveillance of Defendant's residence. This independent research and surveillance corroborated, in large measure, what the CI reported – drugs were being trafficked out of Defendant's residence. See United States v. Scott, 818 F.3d 424, 431-32 (8th Cir. 2016)

(discussing corroboration). Thus, viewing all of the evidence, the undersigned cannot say that Officer Wethington "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Butler, 594 F.3d at 961. Therefore, Defendant has not shown that Officer Wethington acted in reckless disregard for the truth by including the information from the CI in his affidavit.

 For the foregoing reasons, Defendant did not meet his burden of making a substantial preliminary showing. See Engler, 521 F.3d at 969 (explaining that the substantial showing standard is not easily met). Defendant is not entitled to an evidentiary hearing under Franks on his claim that Officer Wethington's affidavit included false information.

Apart from the Franks issue, Defendant did not advance any independent reasons for suppressing the physical evidence seized from his residence on April 6, 2015. The undersigned has reviewed the warrant and affidavit and concludes that sufficient probable cause supports the issuance of the warrant in this case. See Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967); Fed. R. Crim. P. 41 (warrant standard). See also Illinois v. Gates, 462 U.S. 213, 232 (1983) (probable cause standard).

The undersigned recommends that Defendant's motion to suppress physical evidence be denied.

## II.  Motion to Suppress Statements

Defendant also asks the Court to suppress statements he made to the police during the execution of the search warrant at his residence. Defendant's statements fall into three legally distinct categories / time frames. First is the statement Defendant made after Officer Wethington advised him of the search warrant and the nature of the investigation at the outset of their encounter. Second are the statements Defendant made after Officer Wethington found the gun in

the master bedroom, but before Officer Wethington provided any <u>Miranda</u> warnings.  Third are

the statements Defendant made after receiving <u>Miranda</u> warnings.  All three categories of

statements occurred while Defendant was in custody.  As explained more fully below, the first

statement is admissible as a voluntary statement and should not be suppressed.  The second

group of statements, however, were made in response to a question from Officer Wethington, but

before Defendant had been Mirandized.  Accordingly, the second group of statements should be

suppressed.

The third group of statements presents a closer issue.  As explained below, however, the

undersigned concludes that:  (1) based on the entire record, Defendant's invocation of his right to

remain silent was equivocal and therefore not effective; and (2) the statements Defendant made

following the <u>Miranda</u> warnings need not be suppressed.

A.    <u>Legal and Analytical Framework</u>

Generally, statements to law enforcement officers made during custodial interrogation are

subject to the protections and procedures identified in <u>Miranda v. Arizona</u>, 384 U.S. 436, 477-78

(1966).  <u>See</u> <u>United States v. LeBrun</u>, 363 F.3d 715, 720 (8th Cir. 2004) (en banc).  "Not every

confession obtained absent the <u>Miranda</u> warnings is inadmissible, however, because 'police

officers are not required to administer <u>Miranda</u> warnings to everyone whom they question.'"  <u>Id.</u>

(quoting <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977)).  Rather, <u>Miranda</u> warnings are

required only when a suspect is both in custody <u>and</u> subjected to interrogation.  <u>See id.</u>  When

applicable, such warnings must be given before questioning begins.  <u>See</u> <u>Miranda</u>, 384 U.S. at

444.

Because <u>Miranda</u> applies only to custodial interrogation, voluntary statements which are

not in response to questioning are not subject to <u>Miranda</u>.  <u>See</u> <u>Rhode Island v. Innis</u>, 446 U.S.

291, 300-01 (1980). "Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody …." Illinois v. Perkins, 496 U.S. 292, 296 (1990) (citation and quotation omitted). Routine booking questions are reasonably related to police record-keeping and, therefore, are not related to the cautions of Miranda. Pennsylvania v. Muniz, 496 U.S. 582, 600-02 (1990); United States v. Reyes, 908 F.2d 281, 287-88 (8th Cir. 1990). See also United States v. Klein, 13 F.3d 1182, 1184 (8th Cir. 1994) (Miranda warnings not required for "[g]eneral on-the-scene" questioning).

If, after being given Miranda warnings, a defendant agrees to make a statement, the government must show that the waiver was voluntary, knowing, and intelligent for the statement to be admissible. Colorado v. Connelly, 479 U.S. 157, 169-70, 174 (1986); North Carolina v. Butler, 441 U.S. 369, 373-76 (1979); Miranda, 384 U.S. at 444, 475. In this regard, however, there is no requirement that investigators advise a suspect of the specific subject matter of the interrogation. See United States v. Syslo, 303 F.3d 860, 865-66 (8th Cir. 2002) (citing Colorado v. Spring, 479 U.S. 564, 576 (1987)).

**B.      Pre-*Miranda* Statements**

Defendant made two sets of statements before Officer Wethington advised him of his Miranda rights. The factual circumstances, however, dictate different outcomes for each set of statements.

### 1.      Statements Made *Before* Gun Found

Shortly after the SWAT team made entry into Defendant's house to execute the search warrant, Officer Wethington advised Defendant of the existence of the search warrant and the nature of the investigation. This occurred prior to the police finding any gun in the residence. Defendant was in custody, but Officer Wethington was not questioning Defendant at the time.

Rather, Officer Wethington simply provided information to Defendant.

"Interrogation occurs when a law enforcement officer engages in 'either express questioning or is functional equivalent,' which includes 'any words or actions on the part of the police (other than those attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" United States v. Hernandez-Mendoza, 600 F.3d 971, 976-77 (8th Cir. 2010) (quoting Innis, 446 U.S. at 300-01), opinion amended 611 F.3d 418 (2010). "'Voluntary statements not in response to interrogation,' however, 'are admissible with or without Miranda warnings.'" Id. at 977 (quoting United States v. McGlothen, 556 F.3d 698, 701 (8th Cir. 2009)).

Nothing in the record suggests that Officer Wethington's initial statement regarding the warrant and the nature of the investigation was intended to elicit an incriminating response from Defendant. Officer Wethington's statement regarding the warrant and nature of investigation was the type of routine information police should provide to a person when executing a warrant at that person's home. Cf. Muniz, 496 U.S. at 600-02; Reyes, 908 F.2d 287-99 (routine questions relating to police record-keeping and booking are not subject to Miranda). Anything Defendant said to Officer Wethington before the gun was found was voluntary because such statements were not made in response to any interrogation or questioning. Defendant's motion to suppress statements should be denied, in part, as it relates to this initial statement.

## 2. Statements Made *After* Gun Found

Defendant's pre-Miranda statements after Officer Wethington located the gun present a different issue. At the evidentiary hearing, Officer Wethington testified that, after he found the .38 caliber revolver in the master bedroom, he asked Defendant, "Orlando, what do you think we found in your bedroom?" In response, Defendant attempted to explain the gun's presence in the

house.

Officer Wethington testified that when he asked this question, he was not seeking incriminating information. Perhaps Officer Wethington chose his words poorly and intended a merely rhetorical question. But Officer Wethington certainly posed a question to Defendant, and Defendant responded to the question. Indeed, the government concedes that Defendant's initial statements after the gun was found are likely subject to suppression. (See ECF No. 50 at 4)

The record indicates that Officer Wethington immediately recognized the issue, advised Defendant to stop talking, and administered Miranda warnings. Nonetheless, the undersigned finds, based on the entirety of the record, including Officer's Wethington's knowledge that Defendant was talkative, that the officer knew or should have known that his question regarding the gun was "reasonably likely to elicit an incriminating response" from Defendant. Hernandez-Mendoza, 600 F.3d at 977. Accordingly, because Defendant was in custody and had not yet received Miranda warnings, any statements he made in response to Officer Wethington's initial question should be suppressed.

### C.     Post-*Miranda* Statements

There is no dispute that Officer Wethington eventually advised Defendant of his Miranda rights. Defendant contends that, upon being advised of his rights, he immediately invoked his right to remain silent. As such, according to Defendant, any statements he made after receiving his Miranda rights must be suppressed. The government contends that Defendant's invocation was equivocal and his statements are not suppressible.

### 1.     Did Defendant Invoke His Right to Remain Silent?

At the evidentiary hearing, it was established that Defendant was talkative. Officer Wethington told Defendant to stop talking and read Miranda warnings to Defendant from a card.

Defendant indicated that he understood his rights.  Officer Wethington then asked Defendant if he wished to make a statement.  The recording indicates that Defendant responded, "No."  Defendant's position is that he clearly invoked his right to remain silent when he responded "no."  As such, Defendant contends that any statements he made thereafter must be suppressed.  In contrast, the government argues that Defendant's response was equivocal and ambiguous when viewed in context, and therefore his statements need not be suppressed.

The Supreme Court has explained that "[d]uring an interrogation, '[i]f the individual indicates in any manner, at any time prior to or during the questioning, that he wishes to remain silent, the interrogation must cease.'"  United States v. Adams, 820 F.3d 317, 322-23 (8th Cir. 2016) (quoting Miranda, 384 U.S. at 473-74).  The cases after Miranda make clear, however, that the invocation of rights must be unequivocal and unambiguous.  See United States v. Davis, 512 U.S. 452 (1994) (invocation of right to counsel); Berghuis v. Thompkins, 560 U.S. 370 (2010) (invocation of right to remain silent).

Regarding the right to remain silent, the Eighth Circuit has consistently explained that "'[t]o adequately invoke this right and effectively cut off questioning, a suspect must indicate a clear, consistent expression of a desire to remain silent.'"  Adams, 820 F.3d at 323 (emphasis supplied) (quoting United States v. Johnson, 56 F.3d 947, 955 (8th Cir. 1995)).  Courts are to "consider the defendant's statements as a whole to determine whether they indicate an unequivocal decision to invoke the right to remain silent."  Id. (internal citation and quotations omitted).

Although it is a somewhat close question, the undersigned concludes that, when Defendant's statements are viewed in their full context, he did not unambiguously and unequivocally invoke his right to remain silent.  It is true that, upon being asked if he wished to

make a statement, Defendant responded, "No." But that takes into consideration only part of the full context of the situation. Defendant was talkative. Prior to being given his <u>Miranda</u> warnings, Defendant had tried to explain his gun possession to Officer Wethington. Officer Wethington activated a recorder, told Defendant to stop talking, and read the <u>Miranda</u> warnings to Defendant. The recording gives context to and corroborates Officer Wethington's testimony that Defendant was talkative and previously tried to explain the gun's presence in his residence.

After Defendant indicated that he did not wish to make a statement, Officer Wethington asked a single confirmatory question, "So you and I are not talking the rest of the night, correct?" In response, Defendant stated, "I guess so," but then proceeded to try to explain why there was a gun in his house. In full context, therefore, Defendant's invocation of his right to remain silent was equivocal, ambiguous, and inconsistent.

Officer Wethington's inquiry was not directed in any way to the substance of the investigation or designed to elicit an incriminating response. Rather, it was directed solely to clarifying whether Defendant wished to invoke his right to remain silent. Likewise, this inquiry was not an attempt to convince Defendant to change his mind or reconsider his answer.

In view of the entire context up to that point, the undersigned concludes that it was entirely reasonable for Officer Wethington to seek to verify that Defendant had, in fact, intended to invoke his right to remain silent. A reasonable officer in similar circumstances would be justified in concluding that Defendant did not unequivocally or unambiguously invoke his right to remain silent.

Given the entire context of this case, including the audio recording of the encounter,[2] the

---

[2] Without the audio recording, this case might present a closer issue. The audio recording in this matter provides objective indications that Defendant wanted to talk and did not intend to unequivocally invoke his right to remain silent.

undersigned concludes that Officer Wethington's simple question, [s]o you and I are not talking the rest of the night, correct?" was consistent with an attempt to scrupulously honor Defendant's <u>Miranda</u> rights; it was not an attempt to question Defendant following the invocation of his right to remain silent. At no point after Officer Wethington asked that simple clarifying question did Defendant indicate anything other than he wanted to talk about the gun and why he possessed it.

Therefore, the undersigned concludes that Defendant did not unambiguously or unequivocally invoke his right to remain silent.

### 2. Did the Police Violate <u>Missouri v. Seibert</u>?

A conclusion that Defendant did not unequivocally and unambiguously invoke his right to remain silent does not end the inquiry in this case. Rather, because the undersigned has also concluded that the police initially, albeit briefly, violated Defendant's rights by asking him a question before providing <u>Miranda</u> warnings, an inquiry pursuant to <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004) is necessary.

In <u>Seibert</u>, the Supreme Court considered a situation in which the police conducted interrogations in two phases, which a four-justice plurality characterized as "question first and warn later." <u>Id.</u> at 611. The plurality concluded that, the object of the question first strategy at issue in <u>Seibert</u> was "to render <u>Miranda</u> warnings ineffective by waiting for a particularly opportune time to give them after the suspect has already confessed." <u>Id.</u> "The threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as <u>Miranda</u> requires." <u>Id.</u> at 611-12. "Thus, when <u>Miranda</u> warnings are inserted in the midst of <u>coordinated</u> and <u>continuing</u> interrogation, they are likely to mislead and 'depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" <u>Id.</u> at

613-14 (emphasis supplied) (quoting Moran v. Burbine, 475 U.S. 412, 424 (1986)).

"The Court was sharply divided" in Seibert.  United States v. Ollie, 442 F.3d 1135, 1141 (8th Cir. 2006).  Justice Kennedy concurred in the judgment, providing the crucial fifth vote.  Id. Justice Kennedy's concurrence was narrower than the four justice plurality.  Id. at 1142.[3] According to Justice Kennedy, in a two-step interrogation, post-Miranda statements would be suppressed "only where the police intentionally used the two-step technique to render Miranda warnings ineffective.  Such statements would be inadmissible unless the police took curative measures that would ensure that a reasonable person would understand his or her rights."  Id. (citing Seibert, 542 U.S. at 621-22) (Kennedy, J., concurring)).

Thus, after Seibert, the Eighth Circuit has made clear that the mere fact of a Miranda violation does not necessarily trigger suppression of later warned statements.  Rather, "[w]arned statements elicited after an initial Miranda violation may be admissible, so long as officers do not purposefully elicit an unwarned confession in an effort to circumvent Miranda requirements." United States v. Morgan, 729 F.3d 1086, 1091-92 (8th Cir. 2013) (citing Seibert, 542 U.S. at 604; United States v. Torres-Lona, 491 F.3d 750, 757-58 (8th Cir. 2007) (treating Justice Kennedy's concurrence in Seibert as "controlling")).  Cf. Utah v. Strieff, -- S. Ct. --, 2016 WL 3369419 at *8 (June 20, 2016) (declining to suppress evidence after a defendant was arrested on a valid warrant even though the initial seizure of that defendant was unlawful because that seizure was the result of police negligence rather than "part of any systemic or recurrent police misconduct").  In the Eighth Circuit, when a defendant raises a Seibert issue, it is the prosecution's burden to show, by a preponderance of the evidence, "that the officer's failure to

_____

[3] "Because Justice Kennedy provided the fifth vote and his concurrence resolved the case on narrower grounds than did the plurality, it is his reasoning that rules the present case."  Ollie, 442 F.3d at 1142 (citing Marks v. United States, 430 U.S. 188, 193 (1977); United States v. Black Bear, 442 F.3d 658, 664 (8th Cir. 2005)).

provide warnings at the outset of questioning was not part of a deliberate attempt to circumvent Miranda." Ollie, 442 F.3d at 1142-43.

In cases where the failure to warn is not deliberate, "Seibert is not implicated" and Oregon v. Elstad, 470 U.S. 298 (1985) continues to govern. Torres-Lona, 491 F.3d at 757, 758. Under Elstad, the focus is more traditional; "a post warning confession is admissible so long as it was knowingly and voluntarily made." Id. at 758 (citing Elstad, 470 U.S. at 309).

Unlike the situation criticized in Seibert, the record in this case demonstrates the police did not engage in a planned, two-phase interrogation of Defendant in which phase one was intended to elicit an unwarned confession, followed by phase two in which Defendant was given his Miranda rights and encouraged to repeat his prior statements. There was no "coordinated" or "continuing" interrogation of Defendant that preceded the Miranda warnings. Nor was there any purposeful effort circumvent any Miranda requirements.

Any reasonable interpretation of the evidence, including Officer Wethington's recording, strongly indicates that Officer Wethington had no intention of employing a two-phase interrogation strategy to circumvent Miranda. Rather, the record shows that, Officer Wethington's failure to warn Defendant "was 'merely an oversight.'" Torres-Lona, 491 F.3d at 758. For example, Officer Wethington asked Defendant only a single question before providing Miranda warnings. Shortly thereafter, when Defendant began to explain his possession of the revolver, Officer Wethington activated a recorder, advised Defendant to *stop talking*, took him to a quiet place, and provided Miranda warnings. Defendant had started talking in response to Officer Wethington's fairly innocuous, and arguably rhetorical question, after he found the revolver in the Crown Royal bag. The record indicates that Officer Wethington was, perhaps, caught off guard by Defendant's talkativeness. If Officer Wethington was trying to circumvent

the protections of <u>Miranda</u>, he would have exploited this talkativeness and would not have advised Defendant to stop talking.   Finally, only a short time passed from the time Officer Wethington entered the premises until he read Defendant his <u>Miranda</u> rights.

For the foregoing reasons, therefore, the undersigned concludes that Officer Wethington's initial <u>Miranda</u> violation does not spill over and taint any post-<u>Miranda</u> statements of Defendant.  Moreover, the record shows that Defendant's statements were knowingly and voluntarily made.  Therefore, it is recommended that Defendant's post-<u>Miranda</u> statements not be suppressed.

**D.**        **<u>Summary – Recommendations Regarding Defendant's Statements</u>**

It is recommended that Defendant's motion to suppress statements be granted in part and denied in part.  As noted above, Defendant made statements at three legally distinct points in time.

**First**, the statement Defendant made upon being advised of the search warrant and the nature of the investigation should not be suppressed.  Although Defendant was in custody at the time, his statement was not the product of interrogation or questioning of any kind.

**Second**, the undersigned recommends that the Court suppress the statements Defendant made after Officer Wethington confronted Defendant with the fact that the police found a revolver in the bedroom, but before Defendant received any <u>Miranda</u> warnings.  This second group of statements occurred while defendant was in custody and made in response to a question posed by Officer Wethington, but before any <u>Miranda</u> warnings were given.

**Third**, the undersigned recommends that the Court not suppress the statements Defendant made after receiving his <u>Miranda</u> warnings.  The entire record indicates that Defendant did not unambiguously and unequivocally invoke his right to remain silent, and that

Defendant's statements were made knowingly and voluntarily. Furthermore, there is no basis to conclude that Officer Wethington purposefully engaged in a two-step interrogation process in order to circumvent Miranda.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress Evidence and Statements (ECF No. 26) should be granted in part and denied in part.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's request for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant's motion to suppress physical evidence be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant's motion to suppress statements be **GRANTED IN PART AND DENIED IN PART**, as outlined in the foregoing Report and Recommendations.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

The trial of this matter has been set for August 15, 2016, at 9:00 a.m., before the Honorable John A. Ross, United States District Judge.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  30th  day of  June , 2016.